Tlie opinion of tlie Court was delivered by
Todd, J.
This case presents a contest over tlie proceeds of tlie sale of mortgaged property sold under judicial process.
The facts, out of which the controversy grows, are substantially as follows:
Henry Kuntz died in 1864, leaving three minor children, Charles, Anna and Otalice. His widow, tlie mother of tlie children, having forfeited tlie tutorship by lier remarriage, without beiug continued therein by family meeting, one John Poustein, in 1865, was appointed dative tutor to the minors. He gave bond as tutor in the sum of five thousand five hundred dollars. Subsequently, the rights and interests of the minors in the succession of their father, having been liquidated and reduced under proceedings instituted for that purpose, to $1,365, on tlie application of the tutor, and in conformity to the advice of a family meeting, tlie tutor was permitted to substitute a special mortgage in lieu of tlie general mortgage for tlie last stated amount.
This special mortgage was executed on tlie 24th of April, 1869, and on its execution, an order was granted for the cancellation of tlie general mortgage.
On the 26th of the same month and year, Poustein gave a second mortgage on property, in favor of G. Ullmayer, for $2,000, of which the Germania Insurance Company, one of the parties to this controversy; became the holder and owner.
On the 3d of September, 1879, Poustein filed bis final account, which was opposed by tli<3 heirs, and judgment was rendered against him for $1,721.88.
Under this judgment the mortgaged property was seized and sold, and bought in by tlie said Company for $2,600. After this adjudication a rule was taken by the Company against the parties holding the prior mortgage, the children of Kuntz, to show cause why the Company should not be entitled to receive the price of tlie adjudication, less $809.48, admitted to be due tlie heirs of Kuntz. This admitted balance was the difference between the amount of the special mortgage in their favor, $1,365, and $555.48, which they had previously collected under execution against Ponstein, and which amount, thus collected, the Company claimed should be imputed to the amount of the minors’ mortgage, and reduce it pro tanto.
*854 On the trial of the rule the court a qua decreed that the Kuntz heirs were entitled to receive out of said proceeds, $1,720.98, the amount of their execution and costs, and the Insurance Company the residue, and the latter has appealed from this judgment-.
No question is raised in regard to the validity of the special mortgage given by the dative tutor.
Tiie mortgage security originally provided by our Code in favor of minors, was the legal mortgage. Thus, Art. 3288 declares:
“ Minors * * * have a legal mortgage on the property of their tutors and curators as a security for their administration from the day of their, appointment until the liquidation and settlement of their final account.”
Subsequently, in certain cases, and after proper proceedings, a special mortgage was authorized to be given by the tutor, in lien of the security afforded by the legal mortgage. This provision is now embodied in Art. 3-31 of the Code, as follows :
“In all cases where a special mortgage shall be given by tutors, in lieu of the legal mortgage existing in such cases as recognized by law, it shall be the duty of the Judge to cause the property proposed to be mortgaged to bo appraised by experts iu the same manner as is provided when adjudications of the property of minors are made to their surviving father or mother, * * * the amount due the minors to be ascertained by previous liquidation, to be made according to law, and including all interest which will probably accrue."
The effect of giving the special mortgage is to free the rest of the immovables of the tutor from incumbrance, on account of the minors’ rights or claims. It does not, however, destroy the general mortgage, but it has been held that it simply restricts its operation to the particular property mortgaged. 23 An. 544; 33 An. 595.
By Article 123 of the Constitution of 1868, the principle of which is continued in our present Constitution, a mortgage cannot affect third persons unless recorded, and all mortgages in favor of minors were to cease unless recorded at a stated time. In the acts providing for carrying into effect this constitutional provision, now forming Articles of the Code, and directing what is to be recorded and the manner of registry, it is prescribed that the tutor’s bond, or the certificate of the clerk containing an abstract of the inventory, where no bond is required, “ shall operate as a legal mortgage in favor of the minor for the amount therein stated, on the immovable iwoperty of the tutor.” C. C. 3351.
The mortgage in favor of the minors can have no effect against third persons unless recorded, and from the last provisions quoted, it would follow, that when recorded, it could have no effect against third persons, beyond or exceeding the amount shown by the record. It is *855 only up to this amount that tlio mortgage has any existence as to third persons. And this applies as well to the special mortgage as to the legal; for, as we have stated, the special mortgage is merely respective of the legal mortgage, and it is only special because limited in its operation to particular property.
And we do not think, as did the District Judge, that this mortgage covered and included legal interest on the amount of the principal sum, from the date of the act; and by adding the interest, he estimated the mortgage protecting the minors to amount to $2,276.80.
The amount stated in the act of mortgage did not represent a debt owing at that time from the tutor to the minors, but the special mortgage was to take the place of the legal mortgage, which, as we have seen, was to secure the faithful administration of the tutor, and to cover his eventual liability, when the tutorship should have terminated and a settlement with his wards should be made. This is shown by the express conditions of the act. It is true that the act recites that it was executed to secure the sum stipulated therein and legal interest thereon, but in this it not only contravened the order of the Judge authorizing its execution, which limited the mortgage to the principal sum, but contravened also the requirements of the law, as we have seen, which prescribed that the amount of the mortgage should be ascertained and fixed by previous liquidation, and this amount should include all interest that would probably accrue. Even if the amount stated could be construed to represent the capital of the minors, it will be presumed that their expenses would much more than absorb all the interest accruing from so small a capital.
We are of opinion that, whatever might be the indebtedness of the tutor to the minors on his final settlement, under the operation of the present laws on the subject, it could not be enforced against third persons beyond the amount of the mortgage, whether general, legal or special, recorded against the tutor. And the authorities to which we are referred as sustaining a different principle, are authorities without force under the radical change on the subject of minors’ mortgages, inaugurated by the Constitution of 1868 and the Statutes under it, and confirmed by subsequent jurisprudence.
Whilst thus concluding, we do not think that any amount paid during the tutorship and before the discharge of the tutor, whether paid on account of the maintenance and expenses of the minors, or paid in money collected on their judgment against him, is to be specially imputed to the amount expressed in the act of mortgage and deducted therefrom, as contended for by the counsel of the Insurance Company. As before stated, this amount did not represent an actual debt fixed and liquidated, owing by the tutor to the minors, but was to *856 secure his faithful administration of the estate of the minors, and Whatever sum he might owe them, growing out of his administration, in his final settlement and up to the last moment preceding his discharge, not exceeding the amount stipulated .in the act. This results from the very purpose for which the mortgage was given, and to allow such imputation for sums paid to the minors, or on their account, would defeat the very object of the law, which was to provide security to meet any balance that the tutor might owe at the termination of his trust. It is, therefore, very .evident that the principle governing the imputation of payments between ordinary creditor and debtor are not applicable to this case.
Tiie conclusion we have reached compels rrs to amend the judgment of the lower court, by allowing out of the proceeds of the sale, to the heirs of Kuntz, the amount of tlieir special mortgage and costs of sale, and not their entire judgment against their tutor.
,It is, therefore, ordered, adjudged and decreed, that the judgment of the lower court be amended, by decreeing that the Germania Insurance Company is entitled to receive the proceeds of the sale of the property of John Ponstein, loss the sum of- $1,365, and- the costs and charges of the sale, and the sheriff be, and he is hereby ordered to pay over the same to the Company, and that he pay to the children of Henry Kuntz, the said sum of thirteen hundred and sixty-five dollars, and the judgment thus amended is affirmed. The costs of botli Courts to be paid by the defendants in the rule, the children and heirs of Henry Kuntz.
Levy, J., absent.